SHOOK, HARDY & BACON L.L.P.
Jason M. Richardson
One Montgomery, Suite 2600
San Francisco, California 94104
Telephone:   415.544.1900
Facsimile:    415.391.0281

Trent Webb (admitted *pro hac vice)*
Ryan J. Schletzbaum (admitted *pro hac vice*)
Lauren E. Douville (admitted *pro hac vice*)
2555 Grand Blvd.
Kansas City, MO 64108

Palak Shah (admitted *pro hac vice*)
600 Travis St., Ste. 3400
Houston, TX 77002

Attorneys for Apple Inc.
Apple Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NORTHERN CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WiNet Labs LLC, | Case No. 3:19-cv-02248-EJD |
| Plaintiff, | |
| vs. | **DEFENDANT APPLE INC.'S RENEWED RULE 12(B)(6) MOTION TO DISMISS** |
| Apple Inc, | DATE:     January 30, 2020 |
| Defendant. | TIME:     9:00 a.m. |
| | JUDGE:   Hon. Edward J. Davila |

TO THE COURT, ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 30, 2020 at 9:00 am, or as soon thereafter as may be heard in Courtroom 4 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, the Honorable Edward J. Davila presiding, Defendant Apple Inc. will, and hereby does, move the Court to dismiss the present lawsuit.

This Motion is made under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff WiNet Labs LLC's First Amended Complaint (ECF No. 37) fails to state a claim upon which relief may be granted.

This Motion is based on this Notice, the Memorandum of Points and Authorities below, all pleadings, papers and documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice of, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF ISSUES TO BE DECIDED .............................................................. 1

III. FACTUAL BACKGROUND ........................................................................................... 2

IV. LEGAL STANDARD ....................................................................................................... 3

    A. Sufficiency of Pleadings ....................................................................................... 3

    B. Direct Infringement ............................................................................................... 3

    C. Willful Infringement ............................................................................................. 4

V. ARGUMENT ..................................................................................................................... 5

    A. WiNet's FAC Fails to Allege Legally Sustainable Infringement Allegations for Method Claims. ............................................................................................. 5

        1. WiNet cannot sustain its infringement claim based on Apple's mere sales of the accused devices or the "delivery" of software that runs on those devices ................................................................................................. 5

        2. WiNet cannot sustain its infringement claim based on the acts of third-party users of Apple's products ................................................................. 7

        3. WiNet cannot sustain its infringement claim by alleging that the Personal Hotspot feature is a "service" that Apple makes, uses, or sells ... 9

    B. WiNet's Willful Infringement Allegations are Deficient. ................................... 11

    C. Dismissal Should be With Prejudice as WiNet's FAC Fails to Cure Deficiencies Apple Raised in the Prior Motion to Dismiss. ................................ 12

VI. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Adaptix, Inc. v. Apple, Inc.*,
   78 F. Supp. 3d 952 (N.D. Cal. 2015)..................................................................................5, 8

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
   709 F.3d 1348 (Fed. Cir. 2013).................................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................2, 3

*Bascom Research LLC v. Facebook, Inc.*,
   No. C 12-6293, 2013 WL 968210 (N.D. Cal. Mar. 12, 2013) ....................................................3

*Bell Atlantic v. Twombly*,
   550 U.S. 433 (2007) ..............................................................................................................2, 3

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011)..................................................................................................7

*Deep9 Corp. v. Barnes & Noble, Inc.*,
   No. 11–cv–00035, 2012 WL 4336726 (W.D.Wash. Sept. 21, 2012),
   *aff'd* 504 Fed. App'x. 923 (Fed. Cir. 2013) .........................................................................8, 9

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)......................................................................................... passim

*Finjan, Inc. v. Cisco Sys. Inc.*,
   No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017)...............................4, 11, 12

*Finjan, Inc. v. Juniper Networks, Inc.*,
   No. 17-05659-WHA, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018)................................................4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ........................................................................................................4, 11

*Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V*,
   No. 17-CV-06880-BLF, 2018 WL 3537166 (N.D. Cal. July 23, 2018) ...................................3, 4

*Hypermedia Navigation LLC v. Google LLC*,
   No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal Apr. 2, 2019) ..................................11, 12

*Laitram Corp. v. Rexnord, Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991)....................................................................................................4

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008)......................................................................................................3

*Novitaz, Inc. v. inMarket Media, LLC*,
   No. 16-cv-06795, 2017 WL 2311407 (N.D. Cal. May 26, 2017) ..................................................4

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006) ................................................................................................3, 5

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008) ..........................................................................................5, 6, 7

*Saul v. United States*, 928 F.2d 829 (9th Cir. 1991) .......................................................................12

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
   No. 13-cv-01161-HSG, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017) ................................11, 12

*Wi-Lan Inc. v. Sharp Elecs. Corp.*,
   362 F. Supp. 3d 226 (D. Del. 2019) .......................................................................................8, 9

*Wi-Lan, Inc. v. Apple, Inc.*,
   811 F.3d 455 (Fed. Cir. 2016) ....................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................1, 3

Fed. R. Civ. P. 8(a)(2) ......................................................................................................................4

**Statutes**

35 U.S.C. § 271 ................................................................................................................................3

## I. INTRODUCTION

Before this Court has even had the opportunity to hold an initial case management conference, Plaintiff has: (1) spurned Apple's invitation to file an amended complaint after being informed of critical deficiencies in its first complaint; (2) forced Apple to move to dismiss that complaint; (3) sought an extension to respond to Apple's motion only then to file an amended complaint, thereby conceding that the shortcomings Apple identified were fatal; and (4) forced Apple to renew its motion to dismiss because the amended complaint still does not remedy the problems Apple identified in the original complaint.

WiNet, a non-practicing plaintiff, continues to allege only in the most conclusory fashion that Apple infringes claim 1 of the '374 Patent when it "makes, uses, and sells its 'Personal Hotspot' service." (First Amended Complaint, hereinafter "FAC," ECF No. 37, ¶ 9.) WiNet alleges that "Personal Hotspot" is a "service" that "run[s] on the user's device" and that this service performs all of the steps of the claimed method. *Id.* ¶ 9(c). Critically, however, WiNet's amended complaint makes no effort to allege how *Apple* performs the claimed steps, which is a prerequisite to a legally sufficient direct infringement claim. Apple raised this deficiency with WiNet before filing the original motion to dismiss, but WiNet refused to amend the complaint. Unsurprisingly, the FAC does nothing to cure this deficiency. It merely recasts its allegation that Apple directly infringes based on acts of the users of Apple's products into an allegation that Apple directly infringes because Apple "deliver[s]" software for its users to use on Apple devices. (FAC ¶ 9.) Even if Apple delivered software that performs every step of the patented method, it still cannot be liable for direct infringement because nowhere does WiNet allege that Apple itself practices each claimed step of the patented method—which is what is required for the method claim at issue here. Because WiNet cannot cure, Apple renews its motion to dismiss and requests that WiNet's FAC be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## II. STATEMENT OF ISSUES TO BE DECIDED

1) Whether Plaintiff WiNet's claims for direct infringement of U.S. Patent No. 7,593,374 in its First Amended Complaint should be dismissed for failure to state a claim.

2) Whether WiNet's claims for willful infringement of U.S. Patent No. 7,593,374 in its First Amended Complaint should be dismissed for failure to state a claim.

### III. FACTUAL BACKGROUND

On April 25, 2019, WiNet filed a complaint accusing Apple of directly infringing the '374 Patent." (Complaint ¶ 9.) The '374 Patent is directed to a "Multi-To-Multi Point Ad-Hoc Wireless Data Transfer Protocol" that "relates to communication systems and, in particular, to wireless communication systems." ('374 Patent, ECF No. 1, Ex. A, at Col. 1, ln. 14-15.) The '374 Patent's only independent claim recites a "method for forming an ad-hoc network" that requires an actor to perform a number of method steps. (*Id.* at claim 1.) An infringer must "elect[] a coordinating node" by "emitting pings from each of the nodes," "broadcast[] a tag from each of the located nodes," "send[] out an election ballot," and "elect[] the coordinating node based on its serial number." (*Id.*) The claim further requires an actor to "assign[] an ad-hoc network address to each of the other nodes" and "assign[] a local address to each of the other nodes." (*Id.*)

Apple identified a number of deficiencies with WiNet's direct and willful infringement allegations before involving the Court. In an attempt to avoid motion practice, Apple invited WiNet on July 16, 2019 to file an amended pleading "that either withdraws the deficient claims and/or adds sufficient factual allegations to meet *Iqbal/Twombly* pleading standards." (Exhibit A.)[1] WiNet declined that invitation. (Exhibit B.) Apple then filed its motion to dismiss on August 22, 2019. (ECF No. 33.) After seeking an extension to the deadline for its response, WiNet amended its complaint on September 12, 2019. (FAC, ECF No. 38.)

The FAC alleges that "Apple is infringing Claim 1 of the '374 Patent when Apple makes, uses, and sells its 'Personal Hotspot' service." (FAC ¶ 9.) In particular, the FAC asserts that "the 'Personal Hotspot' service on an iPhone forms an ad-hoc network among the iPhone and an iPad and a MacBook Air." (*Id.* ¶ 9(a).) Notably, neither the original Complaint nor the FAC asserts that Apple induces or contributes to any infringement of any claims of the '374 Patent through the acts of third parties under 35 U.S.C. § 271(b) or (c), making the acts of Apple itself the only acts relevant

---

[1] Unless otherwise indicated, citations to "Exhibit A" and "Exhibit B" refer to exhibits attached to the Declaration of Ryan J. Schletzbaum submitted in support of Apple's motion to dismiss.

to this case. (Complaint, ECF No. 1; FAC.) WiNet further claims that "[w]ith knowledge of the claims of the '374 Patent, Apple continued to willfully infringe the '374 Patent by making, using, and selling the 'Personal Hotspot' service." (FAC ¶ 10.)

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is required if "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Bascom Research LLC v. Facebook, Inc.*, No. C 12-6293, 2013 WL 968210, at *3 (N.D. Cal. Mar. 12, 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

### A. Sufficiency of Pleadings

"Notice pleading requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, "such a showing requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 433, 444 (2007)). "Rather, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Legal conclusions may 'provide the framework of a complaint, but they must be supported by factual allegations.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

A claim for direct infringement of a method claim "requires that 'all steps of a claimed method are performed by or attributable to' *the defendant*." *Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V*, No. 17-CV-06880-BLF, 2018 WL 3537166, at *3 (N.D. Cal. July 23, 2018) (granting motion to dismiss because the complaint "does not contain sufficient factual allegations that allow a reasonable inference to be drawn that Defendants are performing the claims methods"). "Conclusory allegations that Defendants perform the claimed methods are 'not entitled to be assumed true.'" *Id.* (citing *Iqbal*, 556 U.S. at 681).

### B. Direct Infringement

Here, the only claims WiNet alleges that Apple infringes are method claims. (FAC ¶ 9.) Apple may only be liable for infringing such claims when it performs the method recited in those claims. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). Unless Apple itself

practices each and every limitation of an asserted method claim, it cannot be liable for direct infringement. *See Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 463 (Fed. Cir. 2016); *Hitachi Kokusai Elec. Inc. v. ASM Int'l*, 2018 WL 3537166, at *3; *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017) (Davila, J.) (quoting *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991)). Accordingly, Apple cannot be liable for selling devices that are, or distributing software that is, merely "capable of infringing use." *Wi-Lan, Inc.*, 811 F.3d at 463. Indeed, "'a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a).' . . . the direct infringer must actually perform the steps in the method claim." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221 (Fed. Cir. 2014)(internal citation omitted).

### C. Willful Infringement

Willful infringement is reserved for "egregious infringement behavior," which is typically described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or — indeed — characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). To successfully state a claim for willful infringement, WiNet must have alleged that (1) Apple had knowledge of the '374 Patent at the time of alleged wrongdoing, and (2) Apple acted maliciously, with bad-faith, or with the "characteristic of a pirate" in continuing the alleged wrongdoing, and without an objectively reasonable basis to do so. *See, e.g.*, *Finjan, Inc. v. Juniper Networks, Inc.*, No. 17-05659-WHA, 2018 WL 905909, at *4-5 (N.D. Cal. Feb. 14, 2018) (dismissing complaint for failing to show pre-suit knowledge and egregious conduct). A claim for willful infringement must also "contain sufficient factual allegations to make it plausible that [the alleged infringer] engaged in 'egregious' conduct that would warrant enhanced damages under *Halo*." *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017).

## V. ARGUMENT

### A. WiNet's FAC Fails to Allege Legally Sustainable Infringement Allegations for Method Claims.

The Court should dismiss WiNet's FAC in its entirety because it contains no plausible allegations that Apple directly infringes the patented methods for at least three reasons: (1) simply alleging that Apple makes, sells, or "deliver[s]" a device capable of performing certain steps cannot constitute direct infringement of a method claim; (2) Apple is not directly liable for a user's use of the Personal Hotspot feature; and (3) WiNet cannot circumvent the pleading requirements for direct infringement through a novel and inadequate "Personal Hotspot-as-a-service" theory. The FAC is deficient and should be dismissed.

#### 1. WiNet cannot sustain its infringement claim based on Apple's mere sales of the accused devices or the "delivery" of software that runs on those devices

WiNet does not, and cannot, set forth a plausible claim that Apple infringes the claimed "method for forming an ad-hoc network" by importing, making, or selling any accused products. The '374 Patent contains only method claims, as opposed to apparatus or system claims. This distinction is critical because it is a fundamental principle of patent law that "[m]ethod claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp.*, 463 F.3d at 1311. "[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a).' . . . the direct infringer must *actually* perform the steps in the method claim." *Ericsson, Inc.*, 773 F.3d at 1221 (citing *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008)).

In order to sustain its claim that Apple directly infringes method claims, WiNet must sufficiently allege that Apple—not a third party user—performs "every single step in the method." *See Ericsson, Inc.*, 773 F.3d at 1221; *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (noting that to prove direct infringement the patentee must show "each and every step of the method or process was performed"); *Ricoh Co.*, 550 F.3d at 1335 ("a process consists of doing something, and therefore has to be carried out or performed.") (internal citations omitted); *see also Adaptix, Inc. v. Apple, Inc.,* 78 F. Supp. 3d 952, 954 (N.D. Cal. 2015)

5

(finding no direct infringement of method claims because there was no evidence that Apple performed the claimed steps).

WiNet's allegations do not, and cannot, link Apple to performance of any claimed step. Instead, WiNet's sparse infringement allegations now rely on Apple "deliver[ing]" a product that is later used by users to allegedly perform the infringing steps of the claimed method. In particular, WiNet merely amended its complaint to include conclusory statements that "Apple *delivers* the accused 'Personal Hotspot' service through software within the possession, custody, and control of Apple." (*See* FAC ¶ 9 (emphasis added).) Notably, WiNet liberally uses the word "delivers" when describing Apple's acts in regard to the "Personal Hotspot" feature, but stops short of stating that Apple actually *performs* the steps of the method claim. Even assuming that Apple does "deliver" software on certain devices that, when used by a user, could enable (and then allow the user to use) the Personal Hotspot feature, the FAC's newly-added language still fails to state a claim. Under clear Federal Circuit law Apple's mere manufacture of, sales or offers to sell "software containing instructions to perform a patented method *does not infringe* the patent under § 271(a)." *Ricoh Co., Ltd.*, 550 F.3d at 1335 (emphasis added); *Ericsson, Inc.*, 773 F.3d at 1222 ("[N]one of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method."). Apple's manufacture or sale of such devices, devoid of the user's user, does not practice those steps.

WiNet's other supplemental allegations suffer from the same deficits. WiNet asserts that "[t]o *deliver* the 'Personal Hotspot,' Apple does *not* rely on hardware, software, or firmware within the possession, custody, or control of Apple product users."[2] (*See* FAC ¶ 9 (emphasis added).) WiNet further states that Apple has "grant[ed] a license to the [Personal Hotspot] software to the Apple device user." (*Id.* (emphasis added).) Again, neither of these statements speak to whether

---

[2] This allegation is directly contradicted by the immediately following paragraphs in the FAC, which repeatedly rely on hardware and software in the possession of a user. *See, e.g.*, FAC ¶ 9(a)("the 'Personal Hotspot' service *on an iPhone* forms an ad-hoc network among the iPhone and an iPad and a MacBook Air."); *id*. ¶ 9(c)("The iPhone, the iPad, and the MacBook Air each have *an antenna and a transceiver*" . . . "the 'Personal Hotspot' service running *on the iPhone*"); *id*. ¶ 9(d) ("the accused software on the iPhone identifies the iPhone to the iPad and MacBook Air"); *id*. ¶ 9(e)("the accused software on the iPhone, the iPad, and the MacBook Air sends an election-ballot packet to one another"); *id*. ¶ 9(f)("The accused software running on the iPhone initiated the 'Personal Hotspot'").

6

Apple *performs* the steps of the method. Just because Apple sells devices or licenses software that, when used by a third party (*i.e.*, the user), allegedly infringe a method claim does not mean that Apple has *performed* the claimed method steps. *See Ericsson, Inc.*, 773 F.3d at 1222; *Ricoh Co., Ltd.*, 550 F.3d at 1335. "Supplying the software for the customer to use is not the same as using the system." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1286 (Fed. Cir. 2011).

The FAC does not, and cannot, set forth any allegations that Apple directly infringes the claimed methods by importing, making, or selling Apple products, and for that reason, the FAC should be dismissed.

        2.    <u>WiNet cannot sustain its infringement claim based on the acts of third-party users of Apple's products</u>

Rather than identify any Apple act of practicing the claimed steps, the FAC relies exclusively on acts performed by customers who use Apple devices. Yet, WiNet fails to explain how or why these user actions should be attributed to Apple. This too is insufficient to sustain any claim that Apple directly infringes.

To the extent the FAC contains any details, the allegations for each step of claim 1 are directed to users of Apple devices and not Apple. For example, the first step in claim 1 requires "electing a coordinating node from the plurality of nodes." The FAC asserts this step is performed when "***the iPhone initiating*** the shared connection with the iPad and the MacBook Air, as well as the iPhone's serial number, the 'Personal Hotspot' software elects the iPhone as the coordinating node." (FAC ¶ 9(b) (emphasis added).)

Likewise, for each subsequent claim limitation the FAC relies on steps allegedly performed when a user attempts to connect an iPhone to an iPad and MacBook Air. (*Id.* ¶ 9(c) ("The 'Personal Hotspot' service running on the iPhone in fact located the iPad and the MacBook Air as being within radio range. . . The 'Personal Hotspot' service running on the iPad and the MacBook perform the same step, emitting pings to locate other devices within radio range"); *id.* ¶ 9(d) ("'Personal Hotspot' service broadcasts serial numbers from each of the iPhone, the iPad, and MacBook Air"); *id.* ¶ 9(e) ("the accused software on the iPhone, the iPad, and the MacBook Air sends an election-ballot packet

7

to one another"); *id.* ¶ 9(f) ("[t]he accused software running on the iPhone initiated the 'Personal Hotspot'. . . [t]he accuded software on the iPhone elects the iPhone the coordinating node based on the iPhone's serial number"); *id.* ¶ 9(g) ("[t]he 'Personal Hotspot' service assigns a name—e.g., 'John's iPhone'—to the iPad and MacBook Air"); *id.* ¶ 9(h) ("[t]he 'Personal Hotspot' service assigns the IP address 172.20.10.1 to the iPhone. . . also assigns the iPad [an] IP address [], and the MacBook Air [an] IP address").

Not surprisingly, in discussing the required steps in claim 1, the FAC never mentions that Apple performs any single step. Instead, each identified action allegedly occurs *after* a user turns on the Personal Hotspot (which the user must first enable with a wireless network carrier) and connects devices to the user's iPad or MacBook Air.

In lieu of Apple itself performing the steps, WiNet must show that Apple directed or controlled the third party's (*i.e.*, user's) actions. When there is no evidence that the accused infringer is performing the steps of a claimed method, "[the patentee] must present evidence that the accused [devices] were used to perform [] a claimed method by *an individual acting for* [the accused infringer], or by an *individual 'controlled'* by [the accused infringer]." *Adaptix v. Apple*, 78 F. Supp. 3d at 956 (emphasis added). Indeed, "the fact that [Apple] *provides and retains ownership of the software* resident on the user's [accused] device is *insufficient, as a matter of law*, to demonstrate *direction or control* over the user." *Deep9 Corp. v. Barnes & Noble, Inc.*, No. 11–cv–00035, 2012 WL 4336726, at *13, 2012 U.S. Dist. LEXIS 135512, at *38 (W.D. Wash. Sept. 21, 2012) (emphasis added), *aff'd* 504 Fed. App'x. 923 (Fed. Cir. 2013), (granting summary judgement of non-infringement for failure to allege sufficient facts that defendant directed or controlled "a user's choice" to perform certain steps); *see also Wi-Lan Inc. v. Sharp Elecs. Corp.*, 362 F. Supp. 3d 226, 235-36 (D. Del. 2019) (finding the accused infringers are not direct infringers because "[d]efendants here have no control over performance of the method after they sell their televisions to end users") (citing *Adaptix v. Apple*, 78 F. Supp. 3d at 957).

For example, in *Adaptix v. Apple*, Adaptix alleged direct infringement based on the accused infringer selling handsets pre-programmed to perform the patented method. 78 F. Supp. 3d at 955. Given that the accused infringer itself did not perform the steps of the patented method and that

8

"[n]one of the evidence cited by Adaptix shows any individual acting on behalf of Defendants using an accused handset to perform any claimed method," the court granted summary judgement of non-infringement. *Id.* at 957-58 (emphasis added).

The situation here is no different. Because WiNet continues to allege that *Apple* is the direct infringer and all of WiNet's infringement allegations only point to a third-party user's actions, WiNet must show that Apple had direction or control over those user actions. *Id.* WiNet's FAC, however, does not even allege any relationship between Apple and its customers beyond Apple product sales, let alone allege Apple controls or directs its product users to perform the claimed method steps.[3] Like Adaptix, WiNet has not alleged a claim for direct infringement. *See id.*; *Ericsson, Inc.*, 773 F.3d at 1222 ("Because the [patentee] cannot point to any evidence in the record that [the accused infringer] performed the infringing steps, or that any of its customers were under its direction or control, the jury did not have substantial evidence to find *direct* infringement") (emphasis in original); *Wi-Lan Inc. v. Sharp Elecs. Corp.*, 362 F. Supp. 3d at 235-36; *Deep9 Corp.*, 2012 WL 4336726, at *13. Moreover, WiNet's new allegation that Apple "provides and retains ownership of [accused] software resident on the user's [] device is insufficient, as a matter of law, to demonstrate direction or control over the user." *Deep9 Corp.*, 2012 WL 4336726, at *13; FAC ¶ 9.

Thus, even if WiNet's allegations are accepted as true, which they are not, they are insufficient to assert a direct infringement claim against Apple because they merely describe how a user (who is not Apple) operates the Personal Hotspot. This omission is fatal to WiNet's complaint.

### 3. WiNet cannot sustain its infringement claim by alleging that the Personal Hotspot feature is a "service" that Apple makes, uses, or sells

Unable to identify a single step of the claimed method performed by Apple, WiNet attempts to circumvent settled authority for direct infringement by alleging that Apple makes, uses, and sells

---

[3] WiNet cites to the "Licensed Application End User License Agreement" in FAC ¶ 9. To the extent that agreement has any relevance to WiNet's allegations, it only shows that a user is licensed to use software on Apple devices, not that Apple is controlling the use of that software. The FAC does not allege otherwise.

9

a Personal Hotspot "service." (FAC ¶ 9.) Even if this "service" claim were true, which it is not, WiNet fails to allege any plausible facts for this novel theory.[4]

First, as explained above, WiNet's claims focus on the devices' operation and acts of a user—not Apple—when enabling the Personal Hotspot. Even if the Personal Hotspot were considered a "service" (which it is not), the identified steps of that "service" are still allegedly performed by the device's user, using the device's hardware and software. (FAC ¶ 9(b) ("software on the iPhone initiating the shared connection"); *id*. ¶9(c) ("The iPhone, the iPad, and the MacBook Air each have an antenna and a transciever" used to "emit[] pings to locate other devices.") WiNet provides no allegations that Apple is controlling or operating the feature on the identified devices. *See Adaptix v. Apple*, 78 F. Supp. 3d at 957 ("What is relevant is whether any such [accused infringer] supplying a handset programmed to perform at least one step may be said to have performed or controlled any other[] [steps]"). Thus, for all the reasons explained above, WiNet does not allege any plausible facts connecting Apple to a single claim limitation. The "service" allegations should be dismissed for that reason alone.

Second, to the extent any "service" is involved in connecting multiple devices over an ad-hoc network, WiNet alleges no facts attributing that service to Apple. According to the FAC, "an iPhone forms an ad-hoc network among the iPhone and an iPad and a MacBook Air" when pings are emitted between devices using the devices "antenna and a transceiver" to "locate[] the iPad and the MacBook Air as being within radio range." (FAC ¶ 9(a) and (c).) In other words, WiNet's allegations and claim 1 require that the devices communicate over a radio using specific hardware in the user's device, otherwise multiple devices could not connect to one another to form the claimed "ad hoc network." However, WiNet does not, and cannot, provide any plausible facts that Apple makes, uses, or sells a wireless or cellular data "service" necessary to form the alleged "ad-hoc network" among an iPhone, an iPad, and a MacBook Air. WiNet simply presumes that a "radio" communication must exist in order for the method steps to occur without attributing that "radio" communication to Apple. Once again, this omission is fatal.

---

[4] The accused "Personal Hotspot" feature is not a "service," but for purposes of this motion, Apple's arguments do not hinge on the definition of "service."

### B. WiNet's Willful Infringement Allegations are Deficient.

As an initial matter, WiNet cannot plead willful infringement because it cannot plead direct infringement by Apple for at least the reasons listed above. *See supra* Section V.A. Additionally, WiNet's willfulness claim is facially deficient because it fails to explain why Apple's conduct has been egregious. To the extent WiNet alleges that the basis for egregious conduct is "continued [] willfull[] infringe[ment]," that is insufficient at the pleading stage. Moreover, apparently WiNet has no additional facts to support its willfulness claim because WiNet did not amend this allegation even after Apple raised this identical deficiency in the original motion to dismiss. (ECF No. 33 at 19-21.)

After the Supreme Court's *Halo* decision, courts in this District have required a complaint to plead facts sufficient to demonstrate "egregious" conduct to sustain a willful infringement claim. *See Finjan, Inc. v. Cisco Sys. Inc.,* 2017 WL 2462423, at *5; *see also Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *4 (N.D. Cal Apr. 2, 2019) (dismissing willfulness claim based only on alleged pre-suit knowledge and "continued infringement" and noting that "[n]othing in the complaint provides specific factual allegations about [the alleged infringer]'s subjective intent or details about the nature of [the alleged infringer]'s conduct to render a claim of willfulness plausible, and not merely possible."); *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017) (dismissing willful infringement allegations based on "Defendant's post-suit manufacturing and sales as the exclusive evidence of Defendant's willful infringement").

In *Finjan v. Cisco,* for example, Finjan made conclusory assertions that "[d]espite knowledge of Finjan's patent portfolio, Defendant has sold and continues to sell the accused products and services." 2017 WL 2462423, at *5. The court dismissed Finjan's willful infringement claims, explaining that "simply ma[king] conclusory allegations of knowledge and infringement" is "not enough to plausibly allege egregiousness." *Id.* (internal quotes and brackets omitted). Because the complaint included "no specific factual allegations about Cisco's subjective intent, or any other aspects of Cisco's behavior that would suggest its behavior was 'egregious,'" the court granted the motion to dismiss with respect to the willfulness claim. *Id.*

WiNet's willfulness allegations are more deficient than those brought in *Cisco*. WiNet's basis for the willfulness claim merely consists of the following statement:

> "In 2014, the predecessor of WiNet Labs, through an agent, offered to sell the '374 Patent to Apple. With knowledge of the claims of the '374 Patent, Apple continued to willfully infringe the '374 Patent."

(FAC ¶ 10.) As shown above, WiNet's allegations at most provide statements reciting "knowledge" and "continued [] willfull[] infringe[ment]," but fail to include "specific factual allegations about [Apple]'s subjective intent, or any other aspects of [Apple]'s behavior that would suggest its behavior was 'egregious.'" *See Finjan, Inc. v. Cisco Sys. Inc.,* 2017 WL 2462423, at *5. Further, WiNet only claims that Apple had knowledge of the patent, but not that WiNet provided pre-suit notice that Apple may be infringing that patent. Just like the plaintiff in *Finjan v. Cisco*, WiNet's conclusory statements of "knowledge" and "continued [] willfull[] infringe[ment]" are insufficient and are "not enough to plausibly allege egregiousness." *Id.*; *see also Hypermedia Navigation*, 2019 WL 1455336, at *4; *Slot Speaker Techs., Inc.*, 2017 WL 4354999, at *2.

The Court should therefore dismiss WiNet's claims of willful infringement for failing to plead facts plausibly supporting that Apple's behavior was "egregious."

### C. Dismissal Should be With Prejudice as WiNet's FAC Fails to Cure Deficiencies Apple Raised in the Prior Motion to Dismiss.

Prior to filing this motion, Apple brought the above deficiencies to WiNet's attention to give it an opportunity to file an amended complaint that either withdrew the allegations or cured the deficiencies, if it could. (Exhibit A.) WiNet refused. (Exhibit B.) Apple was forced to file its initial motion to dismiss. (ECF No. 33.) Now, acknowledging the original complaint was deficient as Apple pointed out months ago, WiNet filed the FAC. However, as explained above, the same deficiencies remain. WiNet has forced Apple to continue to expend resources on deficient allegations that WiNet has not cured after two opportunities to do so. As any further amendment would be futile and lack diligence, the Court should dismiss the FAC with prejudice. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to

amend where the amendment would be futile," "or where the amended complaint would be subject to dismissal.").

## VI. CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court grant the instant motion and dismiss WiNet's First Amended Complaint with prejudice.

September 26, 2019                                            Respectfully Submitted

SHOOK, HARDY & BACON L.L.P.
By: */s/ Ryan Schletzbaum*
Ryan Schletzbaum (admitted *pro hac vice*)
rschletzbaum@shb.com

Attorney for Apple Inc.